| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 4:24-cr-57 |
| | ) | |
| DANIEL SHAUN SMITH, | ) | |
| | ) | |
| Defendant. | ) | |

SENTENCING POSITION OF THE UNITED STATES

The United States by and through counsel, Assistant United States Attorney Devon E.A. Heath, files this Position on Sentencing and hereby represents that it has reviewed the Probation Officer's Pre-Sentence Report (PSR) and that it does not dispute any of the factors or facts set out herein. Honoring its obligation pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure and the Plea Agreement struck between the parties in this case, the United States respectfully recommends a sentence within the applicable advisory guidelines range for the defendant's conduct. Specifically, the United States recommends a sentence of fifty-seven (57) months of imprisonment, the low end.

**Statutory Considerations**

The defendant pled guilty on February 10, 2025 to: Count One, Dealing Firearms without a license, in violation of U.S.C. § 922(a)(1)(A), which carries a sentence of not more than five (5) years imprisonment, not more than three (3) years' supervised released, not more than a $250,000 fine, and a $100 special assessment; and Count Three, Possession with Intent to Distribute Methamphetamine, in violation of U.S.C. §§ 841(a)(1) and (b)(1)(C), which carries a sentence of

1

not more than twenty (20) years imprisonment, not more than five (5) years' supervised release, not more than a $250,000 fine, and a $100 special assessment. The Court may sentence the defendant to any term of imprisonment up to the statutory max for each count.

**Impact of the Plea Agreement**

The parties entered into a plea agreement and the United States acknowledges the defendant's acceptance of responsibility for the offense. Accordingly, the offense level is decreased by two levels pursuant to USSG § 3E1.1(a). Additionally, because the defendant's timely notification of his intention to enter a plea of guilty, permitted the United States to avoid preparing for trial and permitted the United States and the court to allocate their resources efficiently, the United States filed a motion for an additional point reduction under USSG § 3E1.1(b).

**Sentencing Guidelines Calculation**

The United States Probation Department prepared a PSR which detailed the offense of convictions and the characteristics of the defendant. In calculating the offense level for the defendant, the probation office grouped Counts One (1), and three (3) under U.S.S.G. § 3D1.2(c). The base offense was calculated to be fourteen (14) under U.S.S.G § 2K2.1(a)(6)(A). The offense involved between three (3) to seven (7) firearms resulting in a two (2) level enhancement under U.S.S.G § 2K2.1(b)(1)(A). A Firearm was stolen resulting in a two (2) level enhancement under U.S.S.G § 2K2.1(b)(4)(A). The defendant received a five (5) point enhancement pursuant to U.S.S.G § 2K2.1(b)(5)(C)(i)(II). Finally, the defendant used or possessed any firearm or ammunition in connection with another felony offense resulting in a four (4) level enhancement under U.S.S.G § 2K2.1(b)(6)(B). These enhancements resulted in an adjusted base level of twenty-seven (27). Applying the three-level reduction addressed above, the defendant's total offense level

is 24.

The probation officer also calculated a criminal history level for the defendant. The defendant received the following criminal history points: Possess Marijuana (1); and Possession Firearm with Schedule I or II, Drugs: Possess Schedule I or II (2). This yielded a criminal history score of three (3). The total of three (3) criminal history points establishes a criminal history category of II pursuant to U.S.S.G. Chapter 5, Part A.

As a criminal history category II defendant with an offense level of 24, the defendant's sentencing guidelines range is 57 – 71 months.

**Defense Objection to PSR**

The defendant objects to the application of USSG §2K2.1(b)(6)(B) and believes he did not posses any firearm in connection with another felony offense. The defendant ultimately relies on the fact that the drug distribution was an afterthought, and it was not ancillary to the firearm sale. While it may be true that the narcotics were sold possibly as an afterthought, the defendant pled guilty to a firearm count and a distribution of narcotics count. The agreed statement of facts contains information that the confidential source (CI) advised law enforcement agents that they believed they could buy firearms, *and* narcotics. On February 8, 2024, that very thing happened. The defendant sold firearms *and* narcotics. The methamphetamine and firearms were sold simultaneously to the CI on February 8, 2024, which clearly connects the firearms with another felony. Application Note 14(B)(ii) does not require that the firearms involved must rise to a level of actually facilitating the drug offense they merely need to be connected. This enhancement is properly applied to the defendant and the Court should overrule his objection.

**Statutory Sentencing Factors under 18 U.S.C. § 3553(a)**

As outlined *supra*, the appropriate sentencing range under the guidelines is 57 to 71

months. The United States will now address the statutory factors that support its request for a sentence of fifty seven (57) months, the low end of the guideline range.

A.      Nature of the Offense

The defendant's offenses of conviction involve the defendant obtaining and selling firearms, to include stolen ones, without a license, to whomever he pleased with no regard to the criminal history of whom he was dealing with and no regard as to how these firearms would impact violent crime. Firearms are regulated by licensed dealers in an attempt to protect the communities they ultimately end up in. To deal the firearms to persons who have *not* been properly screened destroys the safety regulation all together. Furthermore, the defendant sold narcotics during a sale of a firearm(s). The defendant showed reckless disregard for the communities' safety when he dealt firearms to individuals with questionable criminal histories.

Here the defendant should not have even possessed any firearm, let alone sold them. He turned his possession of firearms into a self-serving means to an end which resulted in *multiple* firearms potentially ending up in the hands of prohibited people who most likely intended to use these firearms in acts of criminal activity that plague our communities. The nature of the defendant's offenses is clearly inherently dangerous. The defendant severely tainted our country's ability to properly regulate firearms. He took a means of protecting our communities and introduced firearms in a manner believed to be directly impacting the violent crime rate in areas where firearms like these end up.

B.      History and Characteristics of the Defendant

The defendant is thirty-seven (37) year old male, born in Newport News, Virginia. The defendant reported having two paternal sisters, and two stepparents in addition to his biological parents. The defendant reported his father died from a Fentanyl overdose at age 53 and his

stepmother also has a history of substance abuse, and a criminal record. The defendant further reported that his mother had a history of misusing prescription pain medication and died when the defendant was 37. The defendant reported his stepfather is still alive and has a history of substance abuse. The defendant has a brother who is incarcerated on unrelated charges and also has a history of substance abuse. He reported a not strong relationship with his sisters, but reported they are drug free. (PSR pg. 2 & ¶ ¶ 39 - 43).

The defendant reported he always had adequate supervision, but did note some heavy drinking by his father. The defendant reported no abuse in the family, but noted his punishments seemed excessive. After his parents divorced, the defendant reported his father moved to Louisiana, but only for two years. The defendant reported being raised in Gloucester and noted that it was peaceful throughout his childhood. (PSR ¶ ¶ 44 – 45). The defendant was married in 2005, and had two children, he reported currently being separated but has hopes of reconciling. He reported his wife also has a history of substance abuse. In 2020, the children's maternal grandparents were given custody in an uncontested custody change due to the defendant and his wife using illegal narcotics. (PSR ¶ ¶ 46 – 48).

The defendant advised he is in good physical health and does not have any diseases or medical conditions. The defendant reported being diagnosed with manic depression and schizophrenia while in the 7th grade but was not given medication and advised that he has not been treated from any mental or emotional conditions as an adult. A mental health assessment is recommended. The defendant consumed alcohol at the age of two (2), first used marijuana at age 12, first used hallucinogens at age 14, and crystal meth at age 27. The defendant reported that he all these substances until July 2024. The defendant has admitted he has a substance abuse problem and advised he would be interested in substance abuse treatment. Substance abuse treatment is

*highly* recommended. (PSR ¶ ¶ 59 – 67).

The defendant reported completing the tenth (10) grade before withdrawing from high school. The defendant reported working as an independent contractor for five years prior to his arrest. He further advised his only other employment was H.B. Hankins, Williamsburg, Virginia. He reported working there during three different times. But ultimately worked there for twelve (12) years. Educational and vocational training is *highly* recommended. (PSR ¶ ¶ 68 – 74).

The defendant clearly struggles with addiction and lacks suitable educational and vocational training. He may also be struggling with some mental health that has yet to be addressed in his adult life. The United States understands that the defendant has spent his life struggling with addiction. However, it appears to the United States that this defendant has spent most of his life making poor decisions that are self-serving, despite being given "breaks" and chances to restart on a positive path.

Need for Just Punishment

Flagrant disrespect for the law, regardless of the reasoning behind it, deserves adequate punishment. The defendant, time and time again, decided to serve himself at the detriment of the communities he is and was a part of. This behavior is beyond dangerous and unacceptable. Had this buyer not been working the results of his actions, in the conduct before this Court, could have been dire and continue to directly impact the crime rate across multiple states and cities.

The continued decisions and the intentional choice to be self-serving regardless of the consequences to others by engaging in this dangerous behavior warrants just punishment.

C.     Deterrence

The two types of deterrence at issue are general and specific.   On the issue of general deterrence, the public must have confidence that the activities of the defendant is treated with the

utmost seriousness. The public must look at the actions of the defendant and know that illegally dealing firearms and narcotics, without proper background checks at the expense of the safety of others will not be tolerated. Individuals inclined to consider committing crimes like those of the defendant must be made to pause in thinking about the consequences that follow. Our communities unfortunately have no shortage of individuals who should not and cannot have firearms that are looking to obtain them at any cost.

As for specific deterrence, the defendant *chose* to sell these firearms. The defendant *chose* to do this not once, but on multiple occasions. The defendant *chose* to put these firearms into our communities. The defendant's repeated choices to put money above the law indicates a lack of concern for consequential action. This is not the first time the defendant made choices that had negative impacts on the community. His actions need consequences. Nothing really seemed to deter this defendant.

D.    Need to Protect Society

The damage these firearms could have done to the community is clear. Society needs to be protected from this kind of behavior. Not only is he selling firearms illegally, he is obtaining them illegally and then selling narcotics on top of that.

**Conclusion**

The United States is concerned with actions like that of the defendant. He put communities at risk, he deceived people to serve his own needs. He was willing to allow these dangerous weapons to end up on our streets in the hands of people who were going to use them to commit crimes. There is a real safety issue here. Firearms are inherently dangerous, and society deserves to be protected from individuals who are willing to help perpetuate a violent cycle. A sentence of 57 months is sufficient but not greater than necessary to accomplish the goals of sentencing.

Respectfully submitted,

ERIK S. SIEBERT
UNITED STATES ATTORNEY


By: _____/s/_____
Devon E.A. Heath
Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
One City Center
11815 Fountain Way, Suite 200
Newport News, Virginia 23606
(757) 591-4000 Office
(757) 591-0866 Fax
Devon.Heath@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 3rd day of June, 2025, I electronically filed the foregoing with

the Clerk of Courts using the CM/ECF system, which will send notification of such filing (NEF)

to the following:

Michael C. Moore, Esq
101 Shockoe Slip
Richmond, Virginia 23219

And I hereby certify that I have e-mailed the document to the following non-filing user:

Patrick H. Raible
United States Probation Office
U.S. District Court, Suite 1150
701 East Broad Street
Richmond, VA

/s/                     .
Devon E.A. Heath
Attorney for Government
United States Attorney's Office
One City Center
11815 Fountain Way
Newport News, Virginia 23606
Phone: (757) 591-4000
Fax: (757) 591-0866
Email: Devon.Heath@usdoj.gov
